UNDERWOOD  TYPEWRITER  COMPANY  *v.* CHAMBERLAIN, TREASURER OF THE STATE OF CONNECTICUT.

ERROR  TO  THE  SUPERIOR  COURT  OF  THE  STATE  OF CONNECTICUT.

No. 215.   Argued October 13, 14, 1920.—Decided November 15, 1920.

1. A state tax upon the proportion of the net profits of a sister-state corporation earned by operations conducted within the taxing State, the enforcement of which is left to the ordinary means of collecting taxes, does not violate Art. I, § 8, of the Federal Constitution by imposing a burden upon interstate commerce.   P. 119.

2. In considering whether a state tax, purporting to be on the net income of a sister-state corporation earned within the taxing State, violates the Fourteenth Amendment by reaching income earned outside, it is not necessary to decide whether it is a direct tax on income or an excise measured by income.   P. 120.

3. A state tax upon the income of a sister-state corporation manufacturing its product within the State but deriving the greater part of its receipts from sales outside the State, which attributes to processes conducted within the State the proportion of the total net income which the value of real and tangible personal property

owned by the corporation within the State bears to the value of all its real and tangible personal property, is not inherently unreasonable and calculated to tax income earned beyond the borders of the State; and, unless it be shown to be so in its application to the particular case, cannot be held to violate the due process clause of the Fourteenth Amendment. P. 120.

4. *Held*, that the fact that the amount of net income so allocated to the taxing State greatly exceeded in this case the portion actually received there, does not prove that income earned outside was included in the assessment.

5. The principle discussed in *Southern Ry. Co.* v. *Greene*, 216 U. S. 400, 414, respecting the right of a State under the Fourteenth Amendment to impose discriminatory taxes on a sister-state corporation which had made large permanent investments in railroad property in the State before the tax law was enacted, is inapplicable to this case, involving a non-discriminatory tax on the locally earned income of a manufacturing corporation. P. 122.

94 Connecticut, 47, affirmed.

THE case is stated in the opinion.

*Mr. Arthur M. Marsh* and *Mr. Arthur L. Shipman*, with whom *Mr. Charles Strauss* and *Mr. Eugene D. Boyer* were on the brief, for plaintiff in error:

Assuming the tax to be what the statute itself says that it is, namely, a tax on net income:

Taxation upon net income is either (a) a direct tax upon the property out of which the income issues, which is another way of saying that it is upon the tangible and intangible assets of the corporation, or (b) it is a tax upon net income, as such, as a species of property disconnected from all other assets of the corporation.

If this tax falls under (a), it is clearly invalid, since, under the Connecticut allocation, that State takes 47 per cent. of all the property and, accordingly, is taxing assets outside of Connecticut, no allowance for intangibles being made.

If this tax falls under (b), then the situs of the net income, which is the property that is taxed, is all important,

and whether such situs is exclusively in Delaware as the domicile of the corporation, or is localized in part in various States, it certainly is not lawfully allocated by a division among the States upon a comparison of tangible assets only.

If the tax is a property tax upon the assets of the corporation in Connecticut, it is invalid because it is not dependent in fact on the value of such assets, no appraisal being provided, no recourse to the courts for ascertainment or correction of the valuation except as to the relative value of tangible assets in Connecticut to tangible assets everywhere, and there being no provision for ascertainment of their value unless by an arbitrary form of application of the so-called unit rule. This fundamental error is emphasized by the fact that there is no allowance or deduction for stocks, bonds, accounts receivable, bank deposits or other intangible assets of that character located outside of Connecticut.

If the tax could possibly be considered as a tax on property of the corporation in Connecticut measured by part of the net income, it is invalid because it is based upon the false assumption that net income is produced, and has a local situs, in proportion to the relative location of tangible assets only.

If the tax is regarded as an excise for the privilege of doing business in Connecticut, to be valid it should have been confined to the subject-matter which Connecticut is entitled to control; that is, the manufacturing and the business purely intrastate, consisting of sales and shipments from Hartford to Connecticut customers, also leases, repairs, etc., in Connecticut for Connecticut customers, and probably if it is such an excise, it must have a suitable maximum. At all events, it must have some logical or reasonable relation to the exercise or value of these privileges.

If not described and intended as such an excise, it

should, at the very least, operate in effect as such.   But the measure adopted having no relation whatever to intrastate sales, leases and repairs, etc., and only the most arbitrary relation to manufacturing carried on in Connecticut, and having no maximum, cannot be regarded as satisfying the law.   Forty-seven per cent. of the net income is arrogated to itself by Connecticut purely on the basis of tangible assets in Connecticut on a given day of the year, without any consideration of the volume of · manufacturing at the factory or the ratio of income which might be said to issue out of the manufacturing operations, and the allocation is without allowance or opportunity for adjustment on account of varying ratios of net income produced by the various operations of the corporation, and without deduction on account of income issuing entirely and wholly out of business having no connection with Connecticut.

· We submit that it was not intended by the legislature as an excise and, whether it was or not, its operation and effect render it invalid because it is unreasonable, arbitrary and has not even a remote relation to the business privileges which Connecticut can control.   Furthermore, even regarding net income as a measure only, it is not open to Connecticut to assess foreign corporations upon data so irrelevant, so inadequate and so remotely related, both commercially and logically, to the exercise of local business privileges.

Upon every one of the above alternative theories of this tax, it either transgresses the commerce clause, or the due process clause, or it discriminates unlawfully against the foreign corporation, principally engaged in interstate commerce and established in the State prior to this legislation.

*Mr. James E. Cooper* and *Mr. Hugh M. Alcorn*, with whom *Mr. Frank E. Healy*, Attorney General of the State of Connecticut, was on the brief, for defendant in error.

*Mr. Louis H. Porter*, by leave of court, filed a brief as *amicus curiæ*.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

This action was brought by the Underwood Typewriter Company, a Delaware corporation, in the Superior Court for the County of Hartford, Connecticut, to recover the amount of a tax assessed upon it by the latter State and paid under protest. The company contended that as applied to it the taxing act violated rights guaranteed by the Federal Constitution. The constitutional questions involved were reserved by that court for consideration and advice by the Supreme Court of Errors. The answers to these questions being favorable to the State, 94 Connecticut, 47, judgment was entered by the Superior Court confirming the validity of the tax. The case comes here on writ of error to that court.

Connecticut established in 1915 a comprehensive system of taxation applicable alike to all foreign and domestic corporations carrying on business within the State. This system prescribes practically the only method by which such corporations are taxed, other than the general property tax to which all property located within the State, whether the owner be a resident or a nonresident, an individual or corporation, is subject. The act divides business corporations into four classes and the several classes are taxed by somewhat different methods. The fourth class, "Miscellaneous Corporations," includes, among others, manufacturing and trading companies, and with these alone are we concerned here. Upon their net income earned during the preceding year from business carried on within the State a tax of two per cent. is imposed annually. The amount of the net income is ascertained by reference to the income upon which the corpora-

tion is required to pay a tax to the United States. If the company carries on business also outside the State of Connecticut, the proportion of its net income earned from business carried on within the State is ascertained by apportionment in the following manner: The corporation is required to state in its annual return to the tax commissioner from what general source its profits are principally derived. If the company's net profits are derived principally from ownership, sale or rental of real property, or from the sale or use of tangible personal property, the tax is imposed on such proportion of the whole net income, as the fair cash value of the real and the tangible personal property within the State bears to the fair cash value of all the real and tangible personal property of the company. If the net profits of the company are derived principally from intangible property the tax is imposed upon such proportion of the whole net income as the gross receipts within the State bear to the total gross receipts of the company. A corporation aggrieved because of a tax assessed upon it may after paying the tax apply for relief to the Superior Court for the County of Hartford. There it may show cause why it is not subject to the tax or why the tax should have been less. If the whole tax assessed is found by the court to be proper, it enters judgment confirming the same. If the tax is found to be for any reason unauthorized in whole or in part, the court enters judgment for the company in the amount with interest which it is entitled to recover; and the state treasurer is directed to pay the same. The decision of the superior court is subject to review by the Supreme Court of Errors as in other cases. Laws of 1915, c. 292, part IV, §§ 19–29; *Underwood Typewriter Co.* v. *Chamberlain*, 92 Connecticut, 199.

The Underwood Typewriter Company is engaged in the business of manufacturing typewriters and kindred articles; in selling its product and also certain accessories and supplies which it purchases; and in repairing and

renting such machines. Its main office is in New York City. All its manufacturing is done in Connecticut. It has branch offices in other States for the sale, lease and repair of machines and the sale of supplies; and it has one such branch office in Connecticut. All articles made by it—and some which it purchases—are stored in Connecticut until shipped direct to the branch offices, purchasers or lessees. In its return to the tax commissioner of Connecticut, made in 1916 under the above law, the company declared that its net profits during the preceding year had been derived principally from tangible personal property; that these profits amounted to $1,336,586.13; that the fair cash value of the real estate and tangible personal property in Connecticut was $2,977,827.67, and the fair cash value of the real estate and tangible personal property outside that State was $3,343,155.11. The proportion of the real estate and tangible personal property within the State was thus 47 per cent. The tax commissioner apportioned that percentage of the net profits, namely $629,668.50, as having been earned from the business done within the State, and assessed thereon a tax of $12,593.37, being at the rate of two per cent. The company having paid the tax under protest, brought this action in the Superior Court for the County of Hartford to recover the whole amount.

*First.* It is contended that the tax burdens interstate commerce and hence is void under § 8 of Article I of the Federal Constitution. Payment of the tax is not made a condition precedent to the right of the corporation to carry on business, including interstate business. Its enforcement is left to the ordinary means of collecting taxes. *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 364; *Atlantic & Pacific Telegraph Co.* v. *Philadelphia,* 190 U. S. 160, 163. The statute is, therefore, not open to the objection that it compels the company to pay for the privilege of engaging in interstate commerce. A

tax is not obnoxious to the commerce clause merely because imposed upon property used in interstate commerce, even if it takes the form of a tax for the privilege of exercising its franchise within the State. *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 695. This tax is based upon the net profits earned within the State. That a tax measured by net profits is valid, although these profits may have been derived in part, or indeed mainly, from interstate commerce is settled. *U. S. Glue Co.* v. *Oak Creek,* 247 U. S. 321; *Shaffer* v. *Carter,* 252 U. S. 37, 57. Compare *Peck & Co.* v. *Lowe,* 247 U. S. 165. Whether it be deemed a property tax or a franchise tax, it is not obnoxious to the commerce clause.

*Second.* It is contended that the tax violates the Fourteenth Amendment because, directly or indirectly, it is imposed on income arising from business conducted beyond the boundaries of the State. In considering this objection we may lay on one side the question whether this is an excise tax purporting to be measured by the income accruing from business within the State or a direct tax upon that income; for the "argument, upon analysis, resolves itself into a mere question of definitions, and has no legitimate bearing upon any question raised under the Federal Constitution." *Shaffer* v. *Carter,* 252 U. S. 37, 55. In support of its objection that business outside the State is taxed plaintiff rests solely upon the showing that of its net profits $1,293,643.95 was received in other States and $42,942.18 in Connecticut, while under the method of apportionment of net income required by the statute 47 per cent. of its net income is attributable to operations in Connecticut. But this showing wholly fails to sustain the objection. The profits of the corporation were largely earned by a series of transactions beginning with manufacture in Connecticut and ending with sale in other States. In this it was typical of a large part of the manufacturing business conducted in the State. The legislature in

attempting to put upon this business its fair share of the burden of taxation was faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders.   It, therefore, adopted a method of apportionment which, for all that appears in this record, reached, and was meant to reach, only the profits earned within the State.   "The plaintiff's argument on this branch of the case," as stated by the Supreme Court of Errors, "carries the burden of showing that 47 per cent. of its net income is not reasonably attributable, for purposes of taxation, to the manufacture of products from the sale of which 80 per cent. of its gross earnings was derived after paying manufacturing costs."   The corporation has not even attempted to show this; and for aught that appears the percentage of net profits earned in Connecticut may have been much larger than 47 per cent. There is, consequently, nothing in this record to show that the method of apportionment adopted by the State was inherently arbitrary,[1] or that its application to this corporation produced an unreasonable result.

We have no occasion to consider whether the rule prescribed if applied under different conditions might be obnoxious to the Constitution.   *Adams Express Co.* v. *Ohio*, 166 U. S. 185, 222.   Nor need we consider the contention made on behalf of the State, that the statute is necessarily valid, because the prescribed rule of apportionment is not rigid, and provision is made for rectifying by proceedings in the Superior Court any injustice resulting from its application.

---

[1] Compare *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530, 552; *Pittsburg, etc., Ry. Co.* v. *Backus,* 154 U. S. 421, 430; *Cleveland, etc., Ry. Co.* v. *Backus*, 154 U. S. 439, 445; *Western Union Telegraph Co.* v. *Taggart*, 163 U. S. 1, 14; *Adams Express Co.* v. *Ohio*, 165 U. S. 194, 221; 166 U. S. 185; *American Refrigerator Transit Co.* v. *Hall*, 174 U. S. 70, 75; *Union Refrigerator Transit Co.* v. *Lynch*, 177 U. S. 149, 152; *St. Louis Southwestern Ry. Co.* v. *Arkansas*, 235 U. S. 350, 365.

*Third.* It is stated in the brief, doubtless inadvertently, that the assignment of errors includes the objection that the tax was void under the Fourteenth Amendment also on the ground that the company, a foreign corporation, had made large permanent investments in Connecticut before the statute of 1915 was enacted. No such error appears to have been specifically assigned and the objection was not pressed in brief or oral argument. It is clearly unsound. To the facts presented here the principle discussed in *Southern Ry. Co.* v. *Greene,* 216 U. S. 400, 414, has no application.

*Affirmed.*