109 P.2d 247

**HUMBLE PIPE LINE CO. v. STATE et al.**

No. 4564.

Supreme Court of New Mexico.

Nov. 27, 1940.

Rehearing Denied Jan. 29, 1941.

Filo M. Sedillo, Atty. Gen., and William A. Watson and Louis C. Lujan, both of Santa Fe, for appellants.

Hervey, Dow, Hill & Hinkle, of Roswell, for appellee.

BRICE, Justice.

This is an action to obtain a declaratory judgment, and the question is whether appellee is liable to an income tax, which appellants assert was levied against it by Ch. 85 of L. 1933, as amended by Ch. 29, L. 1934, Sp.Sess., and Ch. 189, L. 1937.

The appellee is a corporation organized and existing under the laws of the State of Texas with authority to transact business in New Mexico.

The appellant has demanded income tax from the appellee in the sum of $3,287.10, with interest and penalties alleged to be due the State of New Mexico. The trial court concluded that as the appellee is a common carrier of property in interstate commerce, and does no intra-state business, it is not liable to the income tax mentioned.

Appellee owns and operates as a common carrier of crude oil, for compensation, a pipe line extending from a point in Gaines County, Texas, to Hobbs, New Mexico, where it intersects a trunk line extending from Hobbs to Wink, Texas, there connecting with a main line through which the oil is transported to the Texas Gulf coast for refining purposes.

Oil from the several fields of Eastern New Mexico is gathered into the trunk line by means of intersecting pipe lines from the several fields. The Gaines County oil passes out of Texas into New Mexico, and through this state back into Texas with the accumulations of oil from the New Mexico oil fields. The parties agree, in which we concur, that

appellee's business is wholly interstate commerce.

The parts of the law material to a decision, under which it is asserted the tax was assessed and levied, are as follows:

"There is hereby assessed and levied a tax * * * upon the net income * * * of every foreign corporation * * * having a business or agency or engaged in the transaction of business in, into or from this State, *or deriving any income from any property within this State,* in proportion to the net income of such business or agency as hereinafter provided." L. 1933, c. 85, § 1, as amended by L. 1937, c. 189, § 1.

"Corporations Liable to the Income Tax. Every domestic corporation and every foreign corporation doing business in this State shall pay a tax for each taxable year upon its entire net income derived from business done or property located in this state * *." L. 1933, c. 85, § 29, as amended by L. 1934, c. 29, § 3.

"(a) If the entire business of a corporation be transacted within this State, the tax imposed shall be upon the entire net income of such corporation for the taxable year.

"(b) If the business of such corporation be transacted both within and without this State the tax imposed shall be upon the portion of such entire net income for each taxable year as is derived from sales, wherever made, or products, goods, wares and merchandise, manufactured or which originated in this State, and from other business done or property located within this State, which may be determined by an allocation and separate accounting when the books of the corporation show income derived from business done and property located within this State.

"(c) The term 'gross receipts in this State' shall include all receipts from persons, firms, corporations, partnerships and associations, or the United States or any state, county, municipality or governmental unit or department for goods, wares and merchandise or for the transporting, delivering or distributing of goods, wares or merchandise or the transporting of persons or property in, into or from this State, and all receipts from sales, wherever made, of products, goods, wares and merchandise manufactured or which originated in this State." L.1933, c. 85, § 31, as amended by L.1937, c. 189, § 5.

It is asserted that the income tax act in question does not purport to tax the income of corporations and others engaged wholly in interstate commerce, and cites Southern Pacific R. Co. v. State Corporation Comm., 41 N.M. 556, 72 P.2d 15, 16, as authority. In that case we had for consideration the construction of the phrase "every domestic or foreign corporation * * * engaged in any business in this State * * *" against whom a franchise tax was levied by the terms of Ch. 116, N.M.L.1935 (entirely different legislation); and we held that it had reference to business transacted wholly within the state. Property used exclusively for interstate commerce was

specifically excluded from its terms by Sec. 6 of that act. We held that the words needed no construction; that they had reference to business done in the state, not partially within the state or across state lines.

But the language of the act in question here, " * * * engaged in the transaction of business in, into or from this State, or deriving any income from any property within the State * * *", needs no construction. It has reference to business wholly within this state, business initiated in another state and concluded in this state, and business initiated in this state and concluded elsewhere; and as a "catch all" provision it is applied to the person and corporations named "deriving any income from *any property* within this State."

Subsections (a), (b), (c) of Sec. 31, copied in full herein, are not ambiguous. If the entire business is in the state the tax imposed is upon the entire net income. If the business is transacted across state lines the tax is imposed upon the portion of the net income derived "from sales, *wherever made* [of products etc.] which originated in this State and from other business done or *property located within this State.*"

Subsection (c) has special reference to transportation companies and receipts from "transporting * * * property *in, into or from this State.*" The act certainly applies to all oil gathered in New Mexico.

The question of whether it applies to the oil originating in Gaines County, Texas, is more difficult. "In," "into" and "from" in the phrase " * * * in, into or from this State," each must represent a different idea, as we have stated. While oil passing through the state is transported in, into and from the state, yet we think the intention was that "in" should refer to the transportation of property wholly within the state, "into" to the transportation of property from another state into this state as its final destination, and "from," to property originating in this state, the destination of which is in another state.

We come now to the question of whether the words "deriving any income from any property within this State" has reference to income derived from the transportation of Gaines County oil through that portion of the pipe line situated within the state of New Mexico, so that income from its transportation can be said to be "from any property within this State." We believe it should be so construed when considered with other provisions of the act, and the facts of the case. Subsection (b) of Sec. 31, which we have quoted, provides that where a corporation transacts business both "within and without this state" that the tax imposed shall be upon that portion of the net income "which originated in this State, *and from other business done or property located within this State.*" (Our Italics). It is quite certain that the pipe line through which the Gaines County oil is transported

to the main line at Wink, Texas, is partially "located within this State."

When the Gaines County oil is run into the pipe line it is delivered at Hobbs, New Mexico, and the *Hobbs Station* delivers it on to the seaboard. There are large tanks at Hobbs in which the Gaines County oil is or may be held to await the clearing of the line for its transportation, if being used at the time for the transportation of a different grade of oil, as different grades are not mixed in the pipe line.

Then is the transportation of oil from the Gaines County field through New Mexico and Texas to the Gulf Coast, business "transacted both within and without this state?" The transportation of oil from the oil fields to the Gulf Coast is undoubtedly "business" and that business is transacted somewhere. It could be said just as logically that it is not transacted in Texas as as to say that it is not transacted in New Mexico. As we see it, the transportation charge is income from business transacted in both states, and that part of the net income properly allocated to that portion of the pipe line within the state of New Mexico is subject to the tax.

There remains to be decided the question of whether the New Mexico statute, when applied to the appellee's business, which is entirely interstate, violates the commerce clause of the Federal Constitution. Article 1, § 8, cl. 3. That it is not void solely because the effect of the statute is to tax the net income derived from interstate commerce, has been settled by a number of decisions of the Supreme Court of the United States. United States Glue Co. v. Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135, Ann.Cas. 1918E, 748; Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165; Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445; Cudahy Packing Co. v. Minnesota, 246 U.S. 450, 38 S.Ct. 373, 62 L.Ed. 827; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944; Atlantic Coast Line R. Co. v. Daughton (and other cases), 262 U.S. 413, 43 S.Ct. 620, 67 L.Ed. 1051, 1052; McGoldrick v. Berwind-White Coal Min. Co. 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876; Ozark Pipe Line Corp. v. Monier, 266 U.S. 555, 45 S.Ct. 184, 69 L.Ed. 439. While we have found no case decided by that court in which the specific question was an issue, yet by illustration that court has stated a number of times that "a tax may be levied on net income wholly derived from interstate commerce." McGoldrick v. Berwind-White Coal Min. Co. supra [309 U.S. 33, 60 S.Ct. 392, 84 L.Ed. 565, 128 A.L.R. 876]; Atlantic Coast Line R. Co. v. Daughton, supra.

We are unable to see how such tax burdens interstate commerce in a constitutional sense. Like a tax on tangible property within the state, it reduces the profits of the corporation, but it is not a direct burden upon the transportation of oil.

The case of Atlantic Coast Line R. Co. v. Daughton, supra, is, we believe, au-

thority which supports the constitutionality of the tax. The statute of North Carolina *in terms* taxed the net income of individuals and corporations as distinguished from those acts which measure a franchise or occupation tax by the use of the net income of corporations as a factor in arriving at the amount of the tax. The North Carolina act taxed the net income from both intra and inter state commerce, and apportioned the net income from interstate commerce according to mileage, allocating to the state its portion of the net income from interstate commerce carried within the state. The court said [262 U.S. 413, 43 S.Ct. 622, 67 L.Ed. 1051]: "It is conceded by appellants that taxation of the net income of an interstate carrier does not violate the commerce clause, * * * and by the state, that taxation of gross receipts would be void as burdening interstate commerce * * *. It is conceded by appellants that classification of public service corporations, and specifically of railroads, for purposes of taxation does not violate the Fourteenth Amendment, * * * and by the state, that an arbitrary classification is obnoxious to the equal protection clause. * * * Under the commerce clause it is essential that a state tax shall not directly burden interstate commerce and that it shall not discriminate against interstate commerce. With these essentials the North Carolina act complies. It is not assessed on gross receipts. * * * It does not discriminate against interstate commerce. For the taxable net income of other public service corpora-

tions which are wholly intrastate is determined also without allowing capital charges as a deduction. That there is no basis for the claim that the commerce clause is violated by the burden resulting from the aggregate of the several North Carolina railroad taxes was settled in Southern R. Co. v. Watts, supra [260 U.S. 519, 43 S.Ct. 192, 67 L.Ed. 375]."

The Legislature of Connecticut enacted a net income tax law which applied to all foreign and domestic corporations carrying on business within the state. The Underwood Typewriter Company was engaged in manufacturing typewriters within the state, which it sold, with accessories and supplies, to customers in the various states of the Union. Its main office was in the City of New York, with branch offices in other states. In an action to recover income tax paid under protest, the Supreme Court of the United States, in Underwood Typewriter Co. v. Chamberlain, Treasurer, said [254 U.S. 113, 41 S.Ct. 46, 65 L.Ed. 165]: "First. It is contended that the tax burdens interstate commerce, and hence is void, under section 8 of article 1 of the federal Constitution. Payment of the tax is not made a condition precedent to the right of the corporation to carry on business, including interstate business. Its enforcement is left to the ordinary means of collecting taxes. * * * The statute is, therefore, not open to the objection that it compels the company to pay for the privileges of engaging in interstate commerce. A tax is not obnoxious to the commerce clause merely because imposed upon prop-

erty used in interstate commerce, even if it takes the form of a tax for the privilege of exercising its franchise within the state. * * * This tax is based upon the net profits earned within the state. That a tax measured by net profits is valid, although these profits may have been derived in part, or indeed mainly, from interstate commerce, is settled. * * * Whether it be deemed a property tax or a franchise tax, it is not obnoxious to the commerce clause. * * * The profits of the corporation were largely earned by a series of transactions beginning with manufacture in Connecticut and ending with sale in other states. In this it was typical of a large part of the manufacturing business conducted in the state. The Legislature, in attempting to put upon this business its fair share of the burden of taxation, was faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders. It, therefore, adopted a method of apportionment which, for all that appears in this record, reached, and was meant to reach, only the profits earned within the state."

The court held that the tax was not obnoxious to the Federal Constitution.

The question of whether the Wisconsin general income tax act, as it affected corporations engaged in interstate commerce, was invalid in that it violated the commerce clause of the Federal Constitution, was decided in the negative by the Supreme Court of the United States in United States Glue Co. v. Oak Creek, supra. We quote from the opinion:

"There is a provision 'that any person engaged in business within and without the state shall, with respect to income other than that derived from rentals, stocks, bonds, securities or evidences of indebtedness, be taxed only upon that proportion of such income as is derived from business transacted and property located within the state.' * * *

"Stated concisely, the question is whether a state, in levying a general income tax upon the gains and profits of a domestic corporation, may include in the computation the net income derived from transactions in interstate commerce without contravening the commerce clause of the Constitution of the United States.

"It is settled that a state may not directly burden interstate commerce, either by taxation or otherwise. But a tax that only indirectly affects the profits or returns from such commerce is not within the rule. * * *

"The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. * * * A tax

upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the states are not exempted by the federal Constitution because they happen to be engaged in commerce among the states."

The fact that the appellee is a foreign corporation is immaterial. As a state may levy an income tax against its own citizens, so it may levy a like tax, if not discriminatory, upon incomes of foreign corporations, acquired from their operation of property within the state. Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445.

In holding that the Mississippi income tax act was constitutional, the Supreme Court of that State, in State ex rel. Knox, Atty. Gen. v. Gulf, etc., R. Co., 138 Miss. 70, 104 So. 689, 690, said:

"* * * But the tax here imposed is not on the ownership or use without gain of property, but is on the revenue which the activities of the owner causes the property to produce. The taxation of such activities is universal, and is the basis of most of our privilege taxes. * * *

"The appellees do not contend that a tax on income is a tax on property in the sense that it is a tax on the money or property which constitutes the gain or revenue of a person and on the aggregate of which the amount of his income is determined. That it is not such a tax * * *.

"The income of the Gulf, Mobile & Northern Railroad Company is derived from both inter and intra state commerce, and its contention is that a tax by the state on that portion of its income derived from interstate commerce is a burden on such commerce within the meaning of this clause of the federal Constitution. If the tax were on gross income a serious question would be here presented, but it is not on gross, but on net, income, and a tax on net income, derived in whole or in part from interstate commerce, is not a burden thereon within the meaning of this clause of the federal Constitution, as pointed out by the Supreme Court of the United States in [United States] Glue Company v. Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135, Ann.Cas.1918E, 748."

The following state decisions support our conclusions: Western Union Telegraph Co. v. Query, 144 S.C. 234, 142 S.E. 509; International Elevator Co. v. Thoresen, 58 N.D. 776, 228 N.W. 192; State Revenue Comm. v. Edgar Brothers Co., 185 Ga. 216,

194 S.E. 505; State ex rel. Maxwell v. Kent-Coffey Mfg. Co., 204 N.C. 365, 168 S. E. 397, 90 A.L.R. 476, and anno. 484; Curlee Clothing Co. v. Oklahoma Tax Comm., 180 Okl. 116, 68 P.2d 834.

The rule we have stated was approved in Hans Rees' Sons v. North Carolina. 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879, although the case was reversed upon other grounds. See annotation to this case; also annotations in 44 A.L.R. 1228 and 15 A.L.R. 1326; 27 A. J. "Income Tax" Secs. 190 and 193.

Both appellee and appellant cite a number of cases construing statutes in which net income from interstate commerce is a factor used to measure franchise, occupation and other like taxes, such as Fargo v. Stevens, 121 U.S. 230, 7 S.Ct. 857, 30 L.Ed. 888; Alpha Portland Cement Co. v. Massachusetts, 260 U.S. 203, 45 S.Ct. 477, 69 L.Ed. 916, 44 A.L.R. 1219; Anglo-Chilean, etc., Co. v. Alabama, 288 U.S. 218, 53 S.Ct. 373, 77 L.Ed. 710; Gwin, White & Prince v. Henneford et al., 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272; Matson Navigation Co. v. State Board of Equalization, 297 U.S. 441, 56 S.Ct. 553, 80 L.Ed. 791; Atlantic Lbr. Co. v. Com'r, 298 U.S. 553, 56 S.Ct. 887, 80 L.Ed. 1328; Pacific Telephone & Telegraph Co. v. Tax Comm., 297 U.S. 403, 408, 56 S.Ct. 522, 80 L.Ed. 760, 105 A.L.R. 1; Stone, Com'r v. Interstate Natural Gas Co., 5 Cir., 103 F.2d 544.

Such a tax, if reasonable, is approved or disapproved by the Supreme Court of the United States, depending upon whether there was or was not authority to levy that character of tax at all.

The appellee cites, and largely rests its case upon, Ozark Pipe Line Corp. v. Monier, supra. The appellant, a foreign corporation, owned and operated a pipe line extending from Oklahoma through Missouri into Illinois. It did no intrastate business. The Missouri statute requires every corporation engaged in business in that state to pay an annual franchise tax equal to one-tenth of one per cent. on the par value of its capital stock. The holding of the court was [266 U.S. 555, 45 S.Ct. 185, 69 L.Ed. 439]: "The tax is one upon the privilege or right to do business * . * *, and if appellant is engaged only in interstate commerce it is conceded, as it must be, that the tax, so far as appellant is concerned, constitutionally cannot be imposed. It long has been settled that a state cannot lay a tax on interstate commerce in any form, whether on the transportation of subjects of commerce, the receipts derived therefrom, or the occupation or business of carrying it on."

One other case only, need be specifically considered, that is, Alpha Portland Cement Co. v. Massachusetts, supra. A franchise tax of $5 per $1,000 upon "the value of the corporate excess employed by it within the commonwealth" and two and a half per cent. of that part of its net income which is derived from business carried on within the commonwealth, was levied against foreign corporations. The court stated: "The right to lay taxes on tangible

property or on income is not involved; and the inquiry comes to this: May a state impose upon a foreign corporation which transacts only interstate business within her borders an excise tax measured by a combination of two factors—the proportion of the total value of capital shares attributed to transactions therein, and the proportion of net income attributed to such transactions?"—and held that such tax burdened interstate commerce and that the statute was void to that extent. But there is a difference between franchise taxes levied upon corporations because of their activities in interstate commerce and an income tax upon the net income. The court, in that case, specifically disclaimed that the tax in question was an income tax, and stated that such question was not involved. Mr. Justice Brandeis' dissent in this case on substantially the same grounds as in the Ozark Pipe Line Case, in the writer's judgment has become the rule of the Supreme Court of the United States through later decisions.

■ It must be remembered that an excise or franchise tax, measured in any reasonable way, may be imposed, if authorized at all; and the mere fact that net income is used as a factor in determining its amount does not mean either that a net income tax is authorized under the same facts, or that it is not. The excise or franchise tax may be valid while an income tax might, under the same facts, be invalid; or the reverse might be true. Shaffer v. Carter, supra.

■ There is no discrimination. The tax is levied against every individual, trust or estate of the State; every domestic corporation or association; every foreign corporation or association; and every nonresident individual, trust or estate, etc.

The recent cases of Western Live Stock v. Bureau of Revenue, supra, and McGoldrick v. Berwind-White Coal Min. Co., supra, indicate that the Supreme Court of the United States has taken a broader view of the rights of states in taxing either property, franchise or income, as affected by the commerce clause of the Federal Constitution.

No question is raised regarding the validity of the tax, or the amount of it, assuming the constitutionality of the act as applied to appellee's interstate business transacted within the state.

It follows that the case should be reversed, with instructions to enter judgment for the appellant, and it is so ordered.

BICKLEY, C. J., and ZINN, SADLER, and MABRY, JJ., concur.