537 So.2d 1011 (1988)
FORD MOTOR CREDIT COMPANY, Appellant,
v.
DEPARTMENT OF REVENUE, STATE OF FLORIDA, Appellee.
No. 87-2036.
District Court of Appeal of Florida, First District.
September 13, 1988.
Rehearing Denied October 12, 1988.
James E. Tribble, of Blackwell, Walker, Fascell & Hoehl, Miami, for appellant.
Jeffrey M. Dikman and J.C. O'Steen, Asst. Attys. Gen., for appellee.
WENTWORTH, Judge.
Appellant seeks review of a final agency order holding that appellant owes specific amounts for underpaid intangible taxes, penalties, and interest for the years 1980-1982. We find that Chapter 199, Florida Statutes, the Intangible Personal Property Tax Act, as applied to appellant, does not violate the commerce clause of the United States Constitution, and we affirm the order appealed.
Ford Motor Credit Company (FMCC) is a Delaware corporation whose principal place of business is in Michigan. FMCC is authorized to do business in Florida under Chapter 607, Florida Statutes, and maintains branch offices in the state. FMCC's principal business is financing the wholesale and retail sales of vehicles manufactured by Ford Motor Company, of which FMCC is a wholly owned subsidiary. FMCC applications for credit are submitted to FMCC Florida branch offices, which undertake the financial investigations of borrowers. In wholesale transactions, the FMCC Michigan office approves lines of credit and authorizes draws against dealers' accounts. FMCC Florida branch offices send original retail financing contracts to the FMCC Michigan office for storage. The FMCC Michigan *1012 office instructs FMCC Florida branch offices regarding banking transactions.
During the years 1980-1982, FMCC filed corporate tax returns and paid taxes due. In 1983, Florida's Department of Revenue (DOR) audited FMCC's intangible tax returns for the years 1980-1982, and proposed an assessment of tax, penalties, and interest.[1] FMCC filed a timely protest and requested a formal hearing. On the basis of a revised audit report, DOR imposed the intangible tax and delinquent and undervalued property penalties. DOR offered abatement of the undervalued property penalty, which FMCC declined. An administrative hearing officer rejected appellant's contention that Florida's intangible property tax unfairly burdens its interstate transactions, and recommended an assessment of taxes, interest and penalties. DOR entered its final order, adopting virtually verbatim the recommended order.
Appellant contends that application of Florida's intangible tax to its transactions violates the commerce clause by potentially exposing appellant to multiple taxation on the same intangibles. Between 1980 and 1983 section 199.112(1), Florida Statutes, provided that:
All bills, notes or accounts receivable, obligations, or credits, wheresoever situated, arising out of, or issued in connection with, the sale, leasing, or servicing of real or personal property in the state are subject to taxation... . This provision shall apply to any person representing business interests in the state that may claim a domicile elsewhere.... Sales of tangible personal property are in this state if the property is delivered or shipped to a purchaser within this state... .
Chapter 199, Florida Statutes, also provided for a tax on intangible property owned by a domiciliary corporation, regardless of business situs. See Florida Steel Corp. v. Dickinson, 328 So.2d 418 (Fla. 1976). Appellant contends that these multiple bases for taxation impermissibly burden interstate commerce. But since appellant has extended its activities regarding its intangibles to Florida and has availed itself of the benefits of the laws of several states with regard to this property, those several states, including Florida, may each impose a tax upon such intangible property. See State Tax Commission v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358 (1942); Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939); Dickinson, supra. While both Curry and Aldrich concerned due process challenges, the Supreme Court has indicated that taxes which satisfy the due process clause generally will satisfy the commerce clause. See Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949); Ford Motor Co. v. Beauchamp, 308 U.S. 331, 60 S.Ct. 273, 84 L.Ed. 304 (1939); Pacific Telephone & Telegraph Co. v. Tax Commission, 297 U.S. 403, 56 S.Ct. 522, 80 L.Ed. 760 (1936). The contested intangible tax in the present case is not integrally related to interstate commerce and, although it may affect appellant's interstate activities, it produces "only the same kind of incidental and indirect effect as that which results from the payment of property taxes or any other and general contribution to the cost of government." American Manufacturing Co. v. St. Louis, 250 U.S. 459, 464, 39 S.Ct. 522, 524, 63 L.Ed. 1084 (1919).
Appellant nevertheless contends that its interstate activities would be unfairly burdened by multiple taxation if every other state were to adopt Florida's taxing scheme. By this argument appellant seeks application of the internal consistency test for commerce clause analysis, as propounded in Container Corp. v. Franchise Tax Board, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983). This test requires that a tax have "what might be called internal consistency  that is, the formula must be such that, if applied by every jurisdiction," there would be no impermissible *1013 interference with free trade. Id. at 169, 103 S.Ct. at 2942. However, Container Corp. was a franchise tax case, involving the apportionment of a tax to reflect the proportion of business conducted within a state. Since Container Corp. the test has been applied only to franchise and excise taxes. See American Trucking Associations, Inc. v. Scheiner, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987); Tyler Pipe Industries, Inc. v. Washington Department of Revenue, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987); Armco Inc. v. Hardesty, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984). The United States Supreme Court has long distinguished property taxation from the taxation of interstate business activities through excise and income taxes. See e.g., Mobil Oil Corp. v. Commissioner of Taxes, 445 U.S. 425, 448, 100 S.Ct. 1223, 1237, 63 L.Ed.2d 510 (1980); Pullman's Palace-Car Co. v. Commonwealth, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613 (1891). We find no suggestion in the Court's internal consistency cases that it would invade this longstanding distinction, or apply the internal consistency test in the property tax context.[2] We therefore decline to extend the application of this test to Florida's intangible property tax.
In reaching this decision, we adhere to the principle that under the commerce clause no state may impose a tax which discriminates against interstate commerce by affording an undue advantage to local business. See Boston Stock Exchange v. State Tax Commission, 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977); Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). We find that Florida's intangible property tax, as applied to appellant, does not have this prohibited effect. While the tax may impact appellant's activities in interstate commerce, it does not impermissibly burden such activities and is consistent with the commerce clause of the United States Constitution.
We affirm the order appealed.
SMITH, C.J., and WIGGINTON, J., concur.
NOTES
[1] The majority of the intangibles in question were accounts receivable by FMCC and owed by Florida debtors in connection with the purchase of tangible personal property shipped to or located in Florida.
[2] See generally, Justice Scalia's dissent in Tyler Pipe, supra, and Justice O'Connor's and Justice Scalia's dissents in American Trucking, supra.