**S. S. KRESGE CO. v. BENNETT, Attorney General of New York, et al.**

District Court, S. D. New York.
July 2, 1931.

354

Beekman, Bogue & Clark, of New York City (Edward K. Hanlon and Hubert C. Mandeville, both of New York City, of counsel), for plaintiff.

John J. Bennett, Jr. (Wendell P. Brown, of Albany, N. Y., of counsel), for the Attorney General.

Before MACK, Circuit Judge, and FRANK J. COLEMAN and COXE, District Judges.

PER CURIAM.

The taxes as determined by the commission were in exact accord with the method tentatively prescribed by the statute for the apportionment of the plaintiff's entire net income. In determining the base the commission accepted the plaintiff's reported net income for its entire system and took such proportion of it as the designated New York assets bore to all such assets in the plaintiff's entire business. This statute, and more specifically this method of apportionment, has already been held constitutional. Bass, Ratcliff & Gretton, Ltd., v. State Tax Commission, 266 U. S. 271, 45 S. Ct. 82, 69 L. Ed. 282. The plaintiff contends, however, that the taxes in this instance are unconstitutional because the base determined by the commission is larger than the actual net income derived from plaintiff's property, business, and activities within New York State; in other words, that part of the plaintiff's net income derived from without the state is taxed by the New York authorities.

We think it is a sufficient answer to this contention: (1) That the plaintiff has not, in the record before us, shown the net income from New York State, and (2) that the proceedings before the commission were not sufficient to sustain this action. The defendants concede that the statutory remedy of certiorari to the state court is inadequate and that the plaintiff has no adequate remedy against an erroneous decision of the commission on the application for revision except in this action. See Educational Films Corp.

v. Ward, 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400.

■ 1. In attempting to prove its net income derived from New York State, the plaintiff accurately shows its gross income collected here, i. e. the amount of the gross sales within the state, from which are deducted not only the items of cost and expense directly allocable to the individual stores in New York, but also the percentages to defray the expenses of the central organization. These latter charges against the gross income in New York are merely estimated expenses of the business. The plaintiff urges that they are a close estimate because the proceeds from these percentage charges in the entire system one year come within $67,000 of the actual expenses; but they remain nevertheless mere estimates. It might well be that the service rendered to the New York stores by the central organization should be charged for at a different rate from that applicable to other parts of the system; for instance, the services performed by the executive offices and purchasing department are charged for at the rate of 2 per cent. not on the invoice cost of the goods furnished to the stores, but on the gross sales of the stores. If the New York stores were receiving higher prices for the same goods than stores elsewhere, they would be paying a disproportionate part of the expenses of furnishing the goods.

Furthermore, the net income allocated to New York should reflect all the plaintiff's activities within the state. In addition to the operation of the individual stores, the plaintiff operated here a warehouse for the entire system and also purchased goods here for the entire system. Such profit as may have resulted from these activities is not completely reflected in the aggregate net profit of the individual stores within the state, which plaintiff contends is the entire net income attributable to New York.

Since the plaintiff cannot show by the facts before us what was its net income from New York State, but can merely estimate it, we do not think that there is anything before us to sustain the contention that the method of apportionment adopted by the commission was unconstitutional. If the actual net income from the state cannot be demonstrated with reasonable certainty, the commission can properly be intrusted with some discretion in determining what method to use in approximating it. It may possibly be that the plaintiff's figures are a somewhat closer approximation than the commission's, but

that would not warrant our holding the tax illegal if the commission's method was a reasonable one. Bass et al. v. Commission, supra; Underwood, etc., v. Chamberlain, 254 U. S. 113, 41 S. Ct. 45, 65 L. Ed. 165; Hans Rees' Sons, Inc., v. North Carolina, 283 U. S. 123, 51 S. Ct. 385, 75 L. Ed. 879. As a matter of fact, the figures arrived at by the commission far more nearly reflect the amount of business done within the state than do the plaintiff's because if the apportionment of the entire net income is made in accordance with gross sales both within and without the state, almost the same figures are reached as by the method used by the commission. More specifically, the gross sales within the state for the two years in question compared with the gross sales of the whole system were 8.40 per cent. and 8.93 per cent., respectively; the percentage of net income attributed to New York by the commission was approximately 9.72 per cent. and 8.97 per cent., respectively; while that claimed by plaintiff was only 6.30 per cent. and 6.31 per cent., respectively.

■ 2. But aside from the question whether the facts proved before us require a different method of computation from that adopted by the commission, the plaintiff cannot succeed in the present action because these facts were neither proved nor offered to be proved before the commission. Concededly a prerequisite to the maintenance of this action was an application to the commission for a revision. Gorham Manufacturing Co. v. Tax Commission, 266 U. S. 265, 45 S. Ct. 80, 69 L. Ed. 279. An application was made and this question of the proper method of computation was mentioned at the hearing before the commission; but there was no evidence either introduced or offered which would have justified the commission in changing its assessment. Even if this court is not restricted to a review of the commission's determination as in a certiorari proceeding, still before the plaintiff can resort to the extraordinary remedy of injunction against the state authorities it must show that the threatened injury is not the result of the plaintiff's own default in failing to present sufficient evidence to the administrative tribunal. The mere making of an application for a revision does not suffice.

Considering more in detail the proceedings before the commission, it appears that the question of the proper method of apportioning the entire net income was first raised in the plaintiff's return for the tax year beginning November 1, 1928, by a short type-

written statement not called for on the form used. The statement set forth the taxpayer's contention as to its income derived from New York State and the percentage which this bore to the entire net income, but of course no proof of the figures was included. At the hearing on the application for revision the matter was again mentioned, and an officer of the company attempted to state his conclusions without proving the figures to support them. The presiding commissioner said in reference to that testimony, "I am objecting to the whole thing unless you establish how you determine it, because the whole thing is susceptible of jugglery," and at another point, "Cut out the speculation and get down to the facts—the things that can be demonstrated rather than argued." In reference to another point the commissioner said: "The whole point about the thing is that this company was stacking up real estate outside the State against leaseholds here and getting deductions for lease rentals, all of which was taken out of the net income of this company. Frankly, so far as 1924 is concerned, there can not be any question of proportion of segregation because that question is not open. As to subsequent years, the question is. We have not the least objection to your putting in anything that tends to show values. I don't think that you would consider that we would be in any position to try to fix a sales tax on the existing law, and that is what you are heading to." This statement was not, and cannot be, considered as excluding the evidence of definite figures necessary to support the plaintiff's contention.

The hearing terminated on the same day, December 20, 1929, without any offer of proof as to the necessary facts and figures. Nearly nine months thereafter the taxpayer, having secured new counsel, a conference was had with the commissioner in charge of the matter at which the contention was again urged without any proof of the facts and finally on January 13, 1931, more than a year after the hearing, a second conference took place, also without any proof of the facts. Prior to this second conference, the taxpayer's new counsel had sent to the commissioner a brief and certain unverified schedules purporting to show the figures sustaining the taxpayer's contention for the calendar years 1927 and 1928. Aside from the fact that the necessary figures for the calendar year 1926 were not shown, these schedules were merely illustrative of the taxpayer's argument and in no sense evidentiary.

At the hearing upon the application for revision the taxpayer had the burden of proving not only that error existed in the original assessment, but also the amount of the error. The New York Court of Appeals has described this burden of a taxpayer making an application for revision under article 9-A of the Tax Law in People ex rel. Kohlman & Co. v. Law, 239 N. Y. 346, 146 N. E. 622, 624, as follows: "If upon this record the commission was unable, for lack of data essential to an intelligent revision, to resettle the account for taxes, it did not err in confirming the account and dismissing the application. If it did not err in confirming the account, the Appellate Division had no choice, save to approve the confirmation. Either there was error in the disposition by the taxing officers of the application for revision, or there was not. If there was error, the amount of the account as it should be resettled must appear from the record, unless, indeed, we take the view that the relator sustains its burden by showing that something was improperly included, without showing how much. If there was no error, the statute does not vest the court with the power to approve, and at the same time to reverse. There must be some finality in the determination of the revenues of the state. If taxpayers who have failed to take advantage of a first chance are to be given the benefit of a second, it is from the Legislature rather than from the courts that the privilege must come."

Upon all the evidence offered to the commission the latter could not have determined the taxes in accordance with the method now claimed by the plaintiff. The plaintiff urges in its brief that Gorham Manufacturing Co. v. Tax Commission, supra, in requiring the taxpayer to make an application for revision before bringing a suit in equity went no further than to require that the administrative tribunal be given "the opportunity to avoid the error complained of." Even if this were so, the plaintiff did not comply with the rule by furnishing competent proof which might enable the commission to determine whether the plaintiff's contention had any merit or not.

Accordingly, the motion for a preliminary injunction is denied, and the motion to dismiss the bill of complaint is granted.