# CALIFORNIA PACKING CORPORATION v. STATE TAX COMMISSION.

No. 6049.  Decided August 3, 1939.  (93 P. 2d 463.)

Rehearing denied October 11, 1939.

*DeVine, Howell & Stine,* of Ogden, and *Ned Warnock,* of Salt Lake City, for plaintiff.

*Alfred Klein, Grant A. Brown,* and *Alvin I. Smith,* all of Salt Lake City, for defendant.

LARSON, Justice.

Certiorari to review a decision of the State Tax Commission, hereinafter called the Commission, determining and assessing a deficiency against the plaintiff, hereinafter called the Company, as franchise taxes for the fiscal year ending February 29, 1936. The questions presented involve the construction of subdivision (e) of subsection 6, and of subsection 8 of Section 23 of the Franchise Tax Act, being particularly Section 80-13-21, R. S. Utah 1933. The section reads as follows:

"The portion of net income assignable to business done within this state, and which shall be the basis and measure of the tax imposed by this chapter, may be determined by an allocation upon the basis of the following rules:

"(1) Rents, interest and dividends derived from business done outside this state less related expenses shall not be allocated to this state.

"(2) Gains from the sale or exchange of capital assets consisting of real or tangible personal property situated outside this state less losses from the sale or exchange of such assets situated outside this state shall not be allocated to this state.

"(3) Rents, interest and dividends derived from business done in this state less related expenses shall be allocated to this state.

"(4) Gains from the sale or exchange of capital assets consisting of real or tangible personal property situated within this state less losses from the sale or exchange of such assets situated in this state shall be allocated to this state.

"(5) If the bank or other corporation carries on no business outside this state, the whole of the remainder of net income may be allocated to this state.

"(6) If the bank or other corporation carries on any business outside this state, the said remainder may be divided into three equal parts:

"(a) Of one third, such portion shall be attributed to business carried on within this state as shall be found by multiplying said third by a fraction whose numerator is the value of the corporation's tangible property situated within this state and whose denominator is the value of all the corporation's tangible property wherever situated.

"(b) Of another third, such portion shall be attributed to business carried on within this state as shall be found by multiplying said third by a fraction whose numerator is the total amount expended by the corporation for wages, salaries, commissions or other compensation to its employees and assignable to this state and whose denominator is the total expenditures of the corporation for wages, salaries, commissions or other compensation to all of its employees.

"(c) Of the remaining third, such portion shall be attributed to business carried on within this state as shall be found by multiplying said third by a fraction whose numerator is the amount of the corporation's gross receipts from business assignable to this state, and whose denominator is the amount of the corporation's gross receipts from all its business.

"(d) The amount assignable to this state of expenditures of the corporation for wages, salaries, commissions or other compensation to its employees shall be such expenditure for the taxable year as represents the compensation of employees not chiefly situated at,

connected with or sent out from, premises for the transaction of business owned or rented by the corporation outside this state.

"(e) The amount of the corporation's gross receipts from business assignable to this state shall be the amount of its gross receipts for the taxable year from

"(1st) Sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside this state, and sales otherwise determined by the tax commission to be attributable to the business conducted on such premises,

"(2nd) Rentals or royalties from property situated, or from the use of patents, within this state.

"(f) The value of the corporation's tangible property for the purpose of this section shall be the average value of such property during the taxable year.

"(7) In the allocation of net income, gain or loss shall be recognized and shall be computed on the same basis and in the same manner as is provided in this chapter for the determination of net income.

"(8) If in the judgment of the tax commission the application of the foregoing rules does not allocate to this state the proportion of net income fairly and equitably attributable to this state, it may with such information as it may be able to obtain make such allocation as is fairly calculated to assign to this state the portion of net income reasonably attributable to the business done within this state and to avoid subjecting the taxpayer to double taxation."

It is thus provided that a foreign corporation doing business both within and without the state pays a franchise tax for the privilege of doing business in the state, determined by three factors, namely: (1) Rents, interest, and dividends from business done in the state less related expenses; (2) gains from sale or exchanges of capital assets, situated in the state, less losses from such sales and exchanges; and (3) a figure determined by taking (a) the proportion of its tangible property in the state to its total tangible assets; (b) the ratio between its payroll assignable to this state and its total payroll; and (c) the ratio between the gross receipts assignable to business done within the state and the gross receipts from its total business. These last three fractions were to be added together and divided by three to get the allocation fraction, to determine

the third figure assigning the income attributable to business done in the state of Utah. In providing for the determination of the amount of the net income to be used as a basis for computation of the franchise tax the legislature carefully distinguished between business done within the state and business done outside the state, *so as to confine the operation of the tax to business done within the state.*

The Company in filing its franchise tax return, and in determining the allocation fraction, to assign income attributable to business done in the State of Utah, used as the three factors those set out in the statute:

|  | In Utah | Total | Fraction |
|---|---|---|---|
| 1. Tangible Property | $1,121,746.55 | $32,672,848.51 | .034333 |
| 2. Salaries and Wages | 284,014.19 | 10,936,056.31 | .025970 |
| 3. Sales | None | 55,511,789.30 | .000000 |

Total ........................................ .060303

Allocation Fraction (⅓ of above) ................ .020101

It will be observed that the Company in determining the apportionment fraction did not allocate to Utah any sales since none of their goods were sold by salesmen or agents sent out from premises within the State of Utah. The Tax Commission audited the return and charged the Company with total gross receipts in the State of Utah of $2,122,-110.26, thus allocating to this state the sales of goods which were stored in Utah at the time of sale although such sales were made by agents sent out from the California offices of the Company, and also $878,347.32 received by the Company in rents, interest and dividends from property outside the State, termed "financial income." Under the decision of the Commission the allocation fraction is as follows:

|  | In Utah | In and Outside Utah | Fraction |
|---|---|---|---|
| 1. Total tangible property | $1,121,746.55 | $32,672,848.61 | .034333 |
| 2. Total wages, etc. | 284,014.19 | 10,936,056.31 | .025970 |
| 3. Total gross receipts | 2,122,110.26 | 55,511,789.30 | .038228 |

4. Total 1, 2, and 3 ........................................ .098531

5. Apportionment fraction—⅓ of 4 ........................ .032844

The amount shown as No. 3, total gross receipts in Utah, includes sales of goods which were stored in Utah at the time of sale regardless of whether the sales were made to Utah concerns or to concerns in other states.

Should the income from sales of produce manufactured or stored within this state be allocated to income attributable to business carried on within this state when such sales are made for the Company by an agent sent out from the California office? The answer to this question is found in subhead (1st) of subdivision (e) of subsection 6 of Section 80-13-21, R. S. Utah 1933, which we again set out in haec verba:

"(1st) Sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside this state, and sales otherwise determined by the tax commission to be attributable to the business conducted on such premises."

Words could not well be more jumbled, and the section requires some transpositions to be fairly intelligible. The Company construes the subsection as though it read:

"Sales, except those negotiated or effected in behalf of the corporation by agents chiefly situated at, connected with, or sent out for the transaction of business *from premises,* owned or rented by the corporation outside of this state, and sales otherwise determined by the tax commission to be attributable to the business conducted on such premises." (Italics added.)

We have transposed the italicized phrase, "from premises" so as to make the same follow the phrase "for the transaction of business" rather than precede it. This results in excepting from gross income attributable to Utah all sales made in the State from goods manufactured and/or stored in the State if the agent of the Company negotiating the sales is sent into the State to make them. It is hard to conceive that the legislature in enacting a franchise tax law on foreign corporations doing business in this State would provide them such a simple way of avoiding the tax. Goods

are manufactured in the State, stored here; sold here to merchants or jobbers in the State, the money received therefor, but is not included in the income attributable to business done within the State because the salesman of the Company comes in from or is connected with an office outside of this State. Such meaning renders senseless the concluding clause of the section reading: "and sales otherwise determined by the Tax Commission to be attributable to the business conducted on *such premises.*" (Italics added.) What premises? Under the construction by the Company it must refer to premises outside the State. Why should the Tax Commission determine anything about such sales? They are not business done within the state, and the receipts thereof are not to be included in the income from which the franchise tax is computed. Strange to say, the Tax Commission has not indicated any agreement or disagreement with such construction of the statute but seeks to avoid the statute by powers claimed under subsection (8) of the section. We think the Company is reading the statute with a wrong transposition. To give the section the meaning it must have to be consistent with the purpose and general provisions of the whole act the section must be read with the transpositions now to be indicated.

"(1st) Sales except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from premises owned or rented by the corporation, *for the transaction of business* outside of this state, and sales otherwise determined by the Tax Commission to be attributable to the business conducted on such premises."

We have transposed the phrase "for the transaction of business" (in italics) so as to follow the words "by the corporation" which leaves the words "owned or rented" following the word "premises" to which it clearly refers. It certainly cannot refer to "the transaction of business" because such would not be rented by the corporation. This transposition is the only change made in the reading. *Hart* v. *Livermore Foundry & Machine Co.*, 72 Miss. 809, 17 So.

769; *Advance Lumber Co.* v. *Moore,* 126 Tenn. 313, 148 S. W. 212. For clarity in the consistency of thought and to aid in some observations to be made later, we again quote the statute with some bracketed interpolations:

"(1st) Sales [within the State], except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from premises [within the state] for the transaction of business owned or rented by the corporation outside this state, and sales [wherever made] otherwise determined by the tax commission to be attributable to the business conducted on such premises [owned or rented by the corporation within this state for the transaction of business outside of this state]."

The statute thus read becomes definite and readily understandable, in harmony with the object and purpose of the legislation, and confines itself to income from business done within the state, which alone forms the basis upon which the tax is computed. To secure this result, and to avoid objection on constitutional grounds of double taxation, it excepts from sales the income of which is used in computing the tax those which may be handled from offices or premises within the state to a purchaser without the state for shipment out of the state, if made by an agent of the company chiefly engaged in out-of-state sales and business. Sales otherwise made of goods within the state for shipment out of the state are deemed to be sales made and business done within the state, and enter into the income from which the tax is computed. This construction makes the question of the exception of proceeds of a sale of goods within the state depend upon where the sale is made rather than upon the home office of the salesman. This more directly covers business done within the state. This construction also puts into the income of business done within the state the proceeds of sales of goods manufactured or stored within the state but sold for shipment out of the state, where the sale is made through a broker or jobber within the state rather than through an out-of-state agent or employee of the company. We repeat, the exception goes only to sales to an out-of-state party when the agent of the company making

the sale is chiefly connected with out-of-state business and such others made from premises maintained for out-of-state business as the Tax Commission may determine to be attributable to business done out of the state. This was probably done to prevent the avoidance of franchise tax by foreign corporations doing business in the state by simple manipulations in its personnel, and to enable the Tax Commission to make adjustment where there may be question as to whether particular sales are attributable to this state or to out-of-state business.

This reading of the statute gives meaning, purpose, and consistency to subsection (8) of the section, which provides inter alia that in addition to the receipts from the sales noted above, income for tax computation purposes shall also include other sales which the Tax Commission may determine are attributable to the business done within this state although not actually made or consummated here. For example, a merchant at St. George, Utah, orders one dozen refrigerators from B Company, a foreign corporation, through an office and warehouse at Salt Lake City. Instead of shipping the refrigerators from Salt Lake City, a distance of 325 miles, B Company forwards the order to its warehouse at Las Vegas, Nevada, 125 miles from St. George, from which point the refrigerators are delivered, and the Company books the sale as made from Las Vegas, without this state. The Tax Commission, upon investigation, may determine that such sale is attributable to the business conducted by B. Company at its Salt Lake warehouse, and include the receipts thereof in income from a sale made in fact though not in bookkeeping within the State of Utah. The section thus provides that the receipts from business assignable to the state shall be determined from three factors: (a) Sales of goods manufactured or stored within the state, less the exception noted above; (b) sales of goods manufactured or stored without the state to a purchaser within the state, when the Tax· Commission determines such sale is attributable to the business done within the

state; (c) rentals, etc., from property within the state. This affords an apparently fair appraisal or determination of the income the corporation derives from its business within the State of Utah. *Hans Rees' Sons, Inc.,* v. *State of North Carolina,* 283 U. S. 123, 51 S. Ct. 385, 75 L. Ed. 879; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 41 S. Ct. 45, 65 L. Ed. 165; *S. S. Kresge Co.* v. *Bennett,* D. C., 51 F. 2d 353; *United Advertising Corp.* v. *Lynch,* D. C., 1 F. Supp. 302.

In computing its net income against which the allocation fraction was to be applied to determine the amount of the tax to be paid, the Company deducted, inter alia, all sums received as interest from any source whatever on obligations due the Company, and all dividends received from stocks held in other corporations upon the theory that the muniments evidencing these intangible sources or revenue were held without the State of Utah, the Company being a New York corporation and its principal office of business being in California. In redetermining the amount of tax, the Commission disallowed these deductions and included within net income, as it computed the same, the total amount received from these intangibles regardless of the source from which received, where paid, or where the muniments of title were held, upon the theory that such investments were probably made from profits resulting from the general operations of the Company, and so the income therefrom should be allocated in the same proportion in which the Company did its business, thus placing a portion of this income in the net amount used in computing the sum payable to the state as franchise tax. Whether the Commission erred in including in the computation of the tax the interest and dividends received by the Company from investments and stocks in other corporations is the second question for our consideration.

The tax established in the act is "in the nature of an excise tax levied against domestic and foreign corporations alike for the privilege of doing business in a corporate capacity

within this state." *Underwood Typewriter Co.* v. *Chamberlain*, 94 Conn. 47, 108 A. 154, 157; *Bass, Ratcliff & Gretton* v. *State Tax Commission*, 266 U. S. 271, 45 S. Ct. 82, 69 L. Ed. 282; *Stanley Works* v. *Hackett*, 122 Conn. 547, 190 A. 743. The language of the statute throughout evidences an intent only to determine the franchise tax from income from business done under the franchise from the state, that is business done within the state. The various methods of allocation are designed to restrict the tax to business done within the state and to assign to the state for taxation that portion of the business reasonably attributable to the state. There is also apparent a purpose to avoid double taxation. The statute itself provides:

"* * *(1) Rents, interest and dividends derived from business done outside this state less related expenses shall not be allocated to this state. * * *

"(3) Rents, interest and dividends derived from business done in this state less related expenses shall be allocated to this state."

The early rule adopted by the Supreme Court of the United States was that the situs of intangibles for taxation purposes is the domicile of the owner. *Blodgett* v. *Silberman*, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749; *Baldwin* v. *Missouri*, 281 U. S. 586, 50 S. Ct. 436, 74 L. Ed. 1056, 72 A. L. R. 1303. This rule was modified in the case of *Wheeling Steel Corporation* v. *Fox*, 298 U. S. 193, 56 S. Ct. 773, 80 L. Ed. 1143, holding that intangibles can acquire a business situs apart from the residence of the owner so as to be there taxable. Still later decisions have tended back to the original or domicile theory of taxation of intangibles. For an interesting discussion see *Newark Fire Ins.* v. *State Board of Tax Appeals*, 59 S. Ct. 918, 83 L. Ed. _____; and *Curry* v. *McCanless*, 59 S. Ct. 900, 83 L. Ed. _____. But we have found no case holding that the income from intangibles owned by a nonresident and held by him or it outside the state, which income is paid and received without the state, and derived from a business not operating in the state can for any purpose or by any method be taxed

by the state. But our statute, as quoted above, seems to manifest a clear intent on the part of the legislature that so called "financial income" not derived from business done in Utah should not be included in gross receipts for tax computation purposes by the state. It first segregates rents, interest, dividends and gains from sale or exchange of capital assets from that part of the net income attributed to business carried on within the state and subject to the allocation fraction, and provides a specific rule for allocation of such income. Section 80-13-21, subsections (1), (2), (3) and (4). It then provides that *the remainder* of the net income shall be allocated by certain fractional computations therein prescribed. Subsections (5), (6), and (7). It is clear by every provision of the section that the legislature sought to confine the receipts from which the tax is computed to income derived from business done within the state. The language of the act seems clear and definite and on a record such as this one it must follow that the Commission was in error in including within net income for taxation purposes in Utah the income from interest and dividends derived from properties outside of this state and evidenced by muniments of title held outside the state. It is not necessary for us to determine whether the state can provide that all such income must be included in net income for franchise tax purposes nor whether it should do so. The fact is it has not done so. Neither is it necessary for us to hold that in no event may such income be included. All we hold is that under the facts as they appear in this record and under the statute it may not be done.

One further matter is presented in the issues as framed and argued. This involves the construction and meaning of subsection (8) of Section 80-13-21, reading as follows:

"If in the judgment of the tax commission the application of the foregoing rules does not allocate to this state the proportion of net income fairly and equitably attributable to this state, it may with such information as it may be able to obtain *make such allocation as*

*is fairly calculated to assign to this state the portion of net income reasonably attributable to the business done within this state and to avoid subjecting the taxpayer to double taxation."* (Italics added.)

We have italicized the clause that gives rise to the argument. The Company contends that the last clause is controlling and the Commission can depart from the statutory formula set forth in the first seven subsections of the section only when such departure is necessary "to avoid subjecting the taxpayer to double taxation." The Commission takes the position that the subsection is a general grant of power to depart from the statutory formula whenever that may be necessary in order to allocate to the state for tax computation purposes the proper proportion of the net income fairly attributable to business done in this state. And upon such construction the Commission justifies its action in redetermining the tax against the Company rather than upon the construction of subdivision (e) discussed and construed above. As far as statutory construction is concerned we think that subsection (8) is a general section authorizing the Tax Commission to depart from the formulas set out in subsection (6) whenever the application of the provisions of that subsection does not allocate to the state the business fairly attributable to the state or whenever such application results in double taxation. But we do not think that the present case has been shown to be one calling for a departure from the statutory formula. Under subdivision (e) of subsection (6), discussed above, the statutory formula applies with particular aptitude to a business such as this, and yields in the main results closely akin to those which the Commission sought to accomplish by departing from the statutory formula. Upon the record before us, the Company is the usual and ordinary manufacturing company and there is shown no reason for departing from the regular method of computation to determine the amount of its franchise tax.

We hold therefore that the Commission was in error in the method used in determining the amount of net income at-

tributable to business done in the State of Utah, and also in including in such income the out-of-state interest and dividends, called in the record "financial income." The order of the Commission redetermining the franchise tax of the Company is annulled and the cause remanded to the Tax Commission for further proceedings in accordance with the views herein expressed.

MOFFAT, C. J., and PRATT, J., concur.

WOLFE, Justice (concurring in part, dissenting in part).

I concur in the holding that subsection (8) of Section 80-13-21, R. S. Utah 1933, grants authority to depart from the rules where that is required to be fair either to the state or to the taxpayer. The very reading of subsection (8) precludes any other construction. In determining the "portion of net income assignable to business done *within* this state" the commission "may" use the rules set out in the main opinion. This does not mean that the Commission may ignore the rules and choose its own. "May" has the meaning of "should," i. e., should follow the rules unless the rules fail to accomplish the overarching purpose as revealed by subsection (8). It is only in case an application of the rules as laid down fails to "allocate to this state the proportion of net income fairly and equitably attributable to this state" (subsection (8), or, on the other hand, where the rules would subject the taxpayer to so-called double taxation that the Commission may depart from them. This conclusion is fortified by the fact that the word "may" is used, together with the fact that the entire purpose of the rule is to arrive at a figure "fairly calculated to assign to this state the portion of the net income reasonably attributable to the business done within the state and to avoid subjecting the taxpayer to double taxation." Hence where an application of the rules substantially fails to assign to this state the portion of net income reasonably attributable to the business done here or results in undue hardship on the taxpayer through double taxation, it is reasonable to

conclude that in either such case the Tax Commission "may" vary the rules. Whether subsection (8) alone might provide a constitutional standard need not, in view of the above interpretation, be decided. That standards no less indefinite have been held sufficient to meet constitutional requirements appears by the cases of *Field* v. *Clark,* 143 U. S. 649, 12 S. Ct. 495, 36 L. Ed. 294; *St. Louis, I. M. & S. R. Co.* v. *Taylor,* 210 U. S. 281, 28 S. Ct. 616, 52 L. Ed. 1061; *Inter-Mountain Rate Case,* 234 U. S. 476, 34 S. Ct. 986, 58 L. Ed. 1408; *Avent* v. *United States,* 266 U. S. 127, 45 S. Ct. 34, 69 L. Ed. 202; *New York Central Securities Corp.* v. *United States,* 287 U. S. 12, 53 S. Ct. 45, 77 L. Ed. 138; *Federal Radio Commission* v. *Nelson Brothers Bond & Mortgage Company,* 289 U. S. 266, 53 S. Ct. 627, 77 L. Ed. 1166, 89 A. L. R. 406; *Hampton, Jr., & Co.* v. *United States,* 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624; *Buttfield* v. *Stranahan,* 192 U. S. 470, 24 S. Ct. 349, 48 L. Ed. 525; *United States* v. *Shreveport Grain & Elevator Company,* 287 U. S. 77, 53 S. Ct. 42, 77 L. Ed. 175; *New York Central Securities Corp.* v. *United States,* 287 U. S. 12, 53 S. Ct. 45, 77 L. Ed. 138; Interstate Commerce Act, § 5, 49 U. S. C. A. § 5. The office of subsection (8) as herein defined will have applicability later in this opinion.

I also concur in the holding that the income from intangibles whose situs is not in Utah cannot be allocated to Utah. My concurrence, however, is not based so much on the wording of subsections (1) and (2) of Section 80-13-21, R. S. Utah 1933, set out in the court's opinion, as on more fundamental considerations. Subsections (1) and (2) may apply to banks or investment and real estate companies. If "business done" has the meaning of "doing business" as that term is applied to foreign corporations applying to "do business" within the state, I can see how the investment of surplus or reserves by a manufacturing or merchandising corporation in stocks, bonds, and real estate might not be "business done." In the case of trust companies, banks, investment corporations, and the like a main element of

their business is investing and receiving the returns from investments. It is perhaps somewhat inaccurate to speak of interest or dividends received by manufacturing corporations by investment of its surplus cash either temporarily or permanently in the stocks or bonds of other corporations as "derived from business done," when the corporation is not doing that sort of business.

This line of conjecture need not be further pursued because a state could not constitutionally tax, either directly as income or as the measuring rod for an excise tax, the income of a foreign corporation derived from bonds, stocks, or real estate, where the stocks or bonds are in foreign corporations or the real estate outside the state and the income therefrom never reaches or reposes in the state. *People ex rel. Alpha Portland Cement Co.* v. *Knapp,* 230 N. Y. 48, 129 N. E. 202 (Cardozo, J.) ; *Bass, etc., Ltd.,* v. *State Tax Commission,* 266 U. S. 271, 45 S. Ct. 82, 69 L. Ed. 282 (dictum contra to the Knapp case in indicating a distinction between tax on net income direct and use of same as a measuring rod) ; Cooley on Taxation, Vol. 2, 4th Ed., 1850, Section 923. Subsections (1) and (2) may be intended to be a recognition of this principle.

I cannot concur in the interpretation of subsection 6(e) (1st) relating to sales, nor in the treatment accorded that section, nor in the results said to flow from said interpretation by the main opinion. My reasons for dissenting from such interpretation are as follows:

1. I do not think we are warranted in transposing clauses and phrases in a statute in order to give that statute a meaning different from that which it has without the transposition, when the statute as written is susceptible of a reasonable interpretation and not inconsistent with but in accord with the probable intention of the legislature. I shall amplify hereunder.

2. In order to arrive at the result desired by the main opinion, not only the transpositions but emendations as

indicated by the opinion are necessary. This is in aggravation of the erroneous process of interpretation.

3. The transpositions plus the emendations do not bring the result designed for them by the opinion.

4. The same sentence with which liberties of transposition and emendation are taken occurs in subsection (6) (d) in regard to designation of the salaries or wages of employees assignable to Utah. A like transposition of the clauses in that sentence would spell hob with subsection (6) (d). I cannot bring myself to agree that a complicated modifier may in one paragraph have its phrases juggled while the same modifier remains inviolate in another paragraph.

I elaborate regarding these reasons: Subsection (6) (e) (1st) reads:

"Sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside this state, and sales otherwise determined by the tax commission to be attributable to the business conducted on such premises."

This subsection must be read in connection with subsection 6(a), (b), and (c), and the following ideas be kept in mind. This overarching purpose is to determine what part of the net income of a corporation doing business inside and outside the State of Utah, not covered by subsections (3) and (4) is attributable to Utah. After that net income added to the other net income as provided for in subsections (3) and (4) is found, three per cent of such final figure gives the tax imposed for the privilege of doing business in Utah. Hence, the net income is always to be found, not for a direct tax on it but to furnish the measure for the imposition of a franchise tax. Furthermore, subsection (6), (a), (b) and (c) furnish rules designed to obtain in an equitable manner the "net income reasonably attributable to the business done within this state." The legislature evidently thought that a formula which would be "fairly

calculated to assign to this state" such net income other than that derived as set out in subsections (3) and (4) would be to divide the total net income derived from everywhere into three parts and as to each part use an allocating fraction as provided for in (a) (b) and (c) of subsection (6). In this way it was contemplated a rough but equitable method of making a proper allocation would be obtained. If a corporation had much property here as compared to its total property, but did little business here, it would on the first third of its total net income from sales, under subsection (6) (a), pay a disproportionate tax, but this might be compensated for under subsection (6) (c), depending on how subsection (6) (e) (1st) is interpreted. Usually the proportions of its total wages and salaries attributable to Utah, calculated under subsection (6) (b), related to the total wages and salaries paid everywhere would represent a fair proportion of net income allocable to Utah, compared to total net income from all sales. And frequently the inequities which might ensue from the use of just one of the fractions defined by subsection (6) (a), (b) and (c), would be compensated by the use of the three fractions each based on a third of the total net income (excluding that set out in subsections (3) and (4). But here and there by the use of all these fractions a marked inequity might still remain either against the state or against the taxpayer, in which case subsection (8) comes into play.

The Tax Commission contends that such is the situation in the instant case because the amount of sales attributable to Utah under subsection (6) (c) is zero. This is because no sales have been made except by agents or agencies chiefly situated at or connected with or sent out from premises located outside of this state, even though the actual sales have been made by such agents or agencies in this state and to customers located in this state, and of goods processed and/or stored in this state. Subsection (6) (c) makes the numerator of the multiplying fraction for the last third of the total net income (excluding that defined by subsections

(3) and (4), the *gross* receipts from business attributable to Utah. The denominator of the multiplying fraction is the total gross receipts. The company's total gross receipts for 1935-36 were $55,511,709.30, but the numerator was zero for the reason above stated; hence, the multiplying fraction for the last third of the net income is zero. Both the Tax Commission and the appellant Company construed subsection (6) (e) (1st) so as to make the numerator of the multiplying fraction of the (c) third of the "remainder of the net income" as zero. But the Commission found a situation which called for the application of subsection (8) and sought to use the "sales price of all goods which were actually located in Utah at the time of sale, whether manufactured or packed in Utah or outside Utah, and irrespective of the destination of the shipments" as the numerator for the multiplying fraction for the last third of the net income so as to make an allocation as regards that third which was "fairly calculated to assign to this state the portion of net income reasonably attributable to the business done within this state." It remained for this court to construe said subsection (6) (e) (1st) as it has been construed in this case.

With this background, I revert again to the four reasons:

First: Subsection (6) (e) (1st) makes good sense as it reads. It excepts from all sales those made by agents accredited to or moving out of premises outside this state. The extra phrases "for the transaction of business" and "owned or rented by the corporation" simply describe the premises. The language, it may be admitted, is clumsy, but the central thought rather definitely conveyed is that one must determine the premises or offices to which the agents who made the sales were accredited, i. e. attached to, sent out from, situated at, or connected with; and if those premises were outside the State of Utah the receipts from those sales were excepted from the proceeds of sales which constituted gross receipts in Utah. Why such sales were excepted I shall endeavor later to point out.

I do not think we can pick up the phrase "for the transaction of business," which by the plain reading of the paragraph modifies the noun "premises," and place it in a position where it modifies the phrase "outside the state." The change in meaning is drastic. Before transposition the test of excepted sales was whether they could be credited to agencies outside of Utah, i. e., agencies or agents accredited to premises outside of Utah. After the transposition the test is whether the sales which are excepted were made out of the state. It is quite true that sales made by salesmen moving from premises outside the state and made to customers outside the state must in any case be exempt, especially if the goods sold are not stored, or do not originate in the state. It is questionable whether, under any circumstances, this state may, even as a numerator of a multiplying fraction, use the gross receipts of sales made outside of the state by persons working from offices within the state whether or not such sales involve goods stored or originating within the state. (For reasons see hereunder.)

Hence, the transposition does not effect exemption of such sales which were by the language already excepted. What it attempts to do, which was not accomplished by the language as it stands, is to include sales made in the State of Utah, i. e., using Utah purchasing power when made by agents *accredited to outside premises.* Receipts from sales made by agents accredited to Utah premises to Utah customers were included as gross receipts made in Utah by the language before transposition. Conceding that the transposition accomplishes a result to be desired, it plainly constitutes judicial legislation and cannot be done under any rule of statutory construction known to the law.

Second: The emendations between brackets in the paragraph as set out in the opinion are not explanations of something which must be implied from the language as transposed, but additions necessary to bring the paragraph as transposed to fit the intent of the transposer. Take the bracketed phrase "within the state" placed after the word "cor-

poration." Were it not there, how would we know that the writer intended to limit the word "premises" to those "within the state"? As an aside, there appears to be some inconsistency between "sales [within the state]" and sales made "from premises * * * [within the state]" transacted outside of the state. If an agent connected with premises inside the state transacted business outside the state, how does he make a sale [within the state]?

Likewise, in the case of the bracketed phrase "[owned or rented by the corporation within this state for the transaction of business outside this state]." This must be inserted again in order to give "premises" that signification. Moreover, would it not be unusual for a corporation, especially a foreign corporation, desiring to do business in Utah to set up premises within this state solely "for the transaction of business outside of the state"? There would seem to be something queer about the executives of foreign corporations who qualified to do business in Utah in order that they might set up agencies here to do business outside this state. The court's opinion as will be later shown is compelled to introduce the word "chiefly" in connection with the "business outside the state" in order to get around this difficulty. Furthermore, if it was the purpose of (6) (e) (1st) to confine the proceeds from sales made to customers in Utah or sales made in Utah to customers outside of Utah, the idea might have been conveyed in very simple language.

Third: The opinion appears to interpret the language after transpositions and emendations as excepting receipts from sales made out of the state if made by some salesman working out of a Utah office, but whose *chief* business is to cover territory outside of Utah when the sales are of goods "within the state." Constitutionally speaking, such sales may not perhaps be included as a part of Utah's business whether the goods are within or without the state, even for the purpose of making the numerator for the mutliplying fraction. *Gwin, White & Prince* v. *Henneford*, 305 U. S. 434, 59 S. Ct. 325, 83 L. Ed. 272. I shall have something to

say about this matter at the time I give my ideas on the interpretation which should be placed on subsection (6) (e) (1st). At this time I have considerable doubt whether the transpositions and emendations are capable of such limitation. The paragraph as transposed and interpolated seems to exempt sales made by salesmen working out of Utah offices to customers outside of Utah, whether or not that salesman's territory is chiefly in the state of Utah or chiefly outside of the State of Utah, and regardless of whether the goods are in or out of the State of Utah. The interpretation which the opinion puts on the paragraph as transposed and interpolated reads one element into the paragraph as transposed and interpolated, which I do not derive from the revision, i. e., the element that the salesman must not only be simply connected with a Utah office but that even if so connected receipts from his sales are exempt if his sales territory is *chiefly* outside of the State of Utah. This means that we must read into the paragraph as transposed and interpolated another word, to wit: the word "chiefly" in connection with "transactions out of the state." Then there immediately occurs to the mind how such interpretation would be administered. Suppose the salesman covers Utah and other states about equally, varying only at times more intensively in one than in another. It would be very difficult to determine in many cases whether his transactions were chiefly outside or inside the state. Would the receipts of such sales be exempt or included in the numerator?

Fourth: Subsection (6) (d) gives the key for figuring wages, salaries, and commissions of employees assignable to Utah so as to furnish the numerator of the multiplying fraction under subsection (6) (b). It reads:

"The amount assignable to this state of expenditures of the corporation for wages, salaries, commissions or other compensation to its employees shall be such expenditure for the taxable year as represents the compensation of employees not chiefly situated at, connected

with or sent out from, premises for the transaction of business owned or rented by the corporation outside this state."

If we make the same transpositions in this paragraph as are made by the opinion in (e) (1st) the same language of this paragraph would read "shall be such expenditures for the taxable year as represent the compensation of employees not chiefly situated at, connected with, or sent out from premises owned or rented by the corporation [within the state] for the transaction of business outside this state." It can be seen what havoc this transposition makes with this clause. Subsection (6) (d) meant to include all wages, salaries and other compensation of those not chiefly connected with or sent out from outside plants. That was easy to furnish. It would include the compensation of all those chiefly connected with Utah offices, even though they may travel and sell elsewhere. But under the transposition the compensation of employees not chiefly connected with premises within the state who do business outside of the state must be included—a result exactly the reverse of what the paragraph intended. If we leave the "not" out in the transposition (another bit of judicial legislation) we get a result which requires the corporation to return only the compensation of salesmen working out of Utah offices when they transact business outside the state. But what of those who sell within the state or who sell in this and other states as a total territory? If it is answered that in this case the meaning is clear without transposition, the reply must be two-fold, i. e., that it is also clear in subsection (6) (e) (1st) and that in any case it is very unlikely that the legislature would have used exactly the same clause with its phrases intended in one paragraph to modify "premises" and in the other to modify "for the transaction of business."

For the above reasons I believe the holding of the opinion as to the meaning of subsection (6) (e) (1st) to be erroneous but even at the expense of a prolonged opinion, it is only fair after a detailed critical analysis of the opinion not to leave the subject without indicating my own view as to

its meaning. I think it means just what it says. The commission is to determine the receipts from sales everywhere and deduct therefrom those which must be credited to offices outside the state of Utah, because made by agents connected with or working out of said offices, regardless of whether the goods sold are in or out of Utah, regardless of whether they were sold by one whose territory is chiefly outside of Utah, and even though those salesmen come into Utah and sell to Utah customers. I think as a rough way at arriving at a numerator for the multiplying fraction for subsection (6) (c) the legislature thought that by taking the receipts from sales made by salesmen working out of Utah offices regardless of where made and permitting other states to take the receipts from sales of salesmen working out of offices in those other states, even though the sales were made in Utah and to Utah customers, it would average up fairly well and on a give and take proposition give Utah as much as she gave. The thought was that such sales business as was accredited to Utah offices would furnish a fair measure of the business done in Utah because in a sense when that office did the business it was Utah business.

This construction brings up the question as to whether Utah may, even in fixing a numerator in a multiplying fraction, use for that numerator the receipts from sales made in other states by salesmen working out of Utah offices. But the interpretation of subsection (6) (e) (1st) advanced by the court's opinion does not completely avoid this question. The question is an intricate one on which at this time I express no opinion. In the recent case of *Gwin, White & Prince* v. *Henneford,* supra, it was held that the state of Washington could not use a percentage of the gross receipts from services rendered by a Washington corporation as a marketing agent for fruit growers' cooperative organizations in making sales and deliveries in other states as a measure of the franchise tax for engaging in business activities in the State of Washington. But in that case the corporation had agencies in other states and foreign coun-

tries and was required to qualify in those states which left it open to taxation on receipts derived from sales in those states. This placed an unconstitutional burden on interstate commerce. The result would apparently have been the same if the selling corporation had been able to carry on its interstate commerce without qualifying for the doing of business in other states for reasons stated in *Western Live stock* v. *Bureau of Revenue*, 303 U. S. 250, 58 S. Ct. 546, 548, 82 L. Ed. 823, 115 A. L. R. 944, and cases cited therein. See, also, *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295. Whether the effect would be any different if the gross receipts from such sales were to be used as a numerator of a multiplying fraction of a portion or all of the total net income is an open question on which no opinion need here be given. Suffice it to say for my purposes that if the construction of subsection (6) (e) (1st) herein advocated were adopted and such construction found to encounter unconstitutionality, subsection (8) would permit the commission to substitute a formula which would prevent such double taxation as would be unconstitutional and at the same time allocate to this state the business fairly attributable to it in reference to sales.

But under the facts of this case the commission found that the application of subsection (6) (e) (1st) interpreted as I have construed it brought a result of zero for the numerator and therefore eliminated the multiplying fraction for ⅓ of the net income from sales. It thus would have no constitutional question under those facts to grapple with. It found and was entitled to find that by the peculiar facts of this case an application of the rule of subsection (6) (c) would work a failure to "allocate to this state the proportion of net income fairly and equitably attributable to this state." In this situation the Tax Commission was empowered under subsection (8) to apply a formula which would be "fairly calculated to assign to this state the portion of net income reasonably attributable to the business done within this state" from "such information as it may be able to obtain,"

according to a formula which would not bring about unconstitutionality. In view of the fact that I am dissenting from this part of the court's opinion, I do not feel called upon to state whether the use by the commission of the figure representing goods stored in Utah, to wit, $2,122,-110.26, attempted to be backed up by figures of what business the Utah Packing Corporation did the previous year in *all* the states was a proper substitute. But I again call attention to the fact that there is considerable doubt as to whether a state may take the total gross income from sales where a substantial portion of that income results from sales outside of the state as a measure of the franchise tax. It is not yet clear from the Crew Levick Co. case, supra, or the Henneford case, supra, or the other United States Supreme Court cases whether such is forbidden only if the situation is one where other states have levied or are in a position to tax those sales, but not forbidden where the situation is such that the other states could not do that and were therefore not in a position to burden interstate commerce. The expressions seem to me to be broad enough to prevent use of total gross or total net income where a substantial part is derived from out of state operations even though the corporation is doing business in other states in such a way that those states may not tax it; but I am not certain that the U. S. Supreme Court has had a case in which the facts squarely present the question. My present impression is that a fairer and constitutionally more certain formula would have been to take as the numerator of the multiplying fraction under subsection (6) (c) the amount of sales actually made to Utah buyers. This result will perhaps be the same as arrived at by the court's opinion, but does not take unwarranted liberties with subsection (6) (e) (1st) nor definitely change the meaning of that paragraph for *all* cases regardless of the application of subsection (8).

McDONOUGH, Justice.

I concur in the views expressed by Mr. Justice WOLFE.